UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christine Jorge and Joanne Durrang, on behalf of themselves and all others similarly situated<br><br>                Plaintiff,<br><br>   v.<br><br>EQUIFAX INC.<br>            Defendant. | Civil Action<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Christine Jorge and Joanne Durrang (collectively "Plaintiffs"), by and through their undersigned counsel, the Law Offices of Gus Michael Farinella, PC, individually and on behalf of the Classes defined below, allege the following against Defendant, Equifax Inc. ("Equifax" or "Defendant") based on personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1. Plaintiffs bring this class action against Equifax for its failure to secure and safeguard the personal and private information of approximately 143 million Americans.

2. On July 29, 2017, Equifax discovered unauthorized access to its databases storing the confidential and private information of millions of individuals throughout the United States.

3. On September 7, 2017, Equifax publicly announced that due to vulnerability in its systems, its files were accessed by criminals for at least the period of mid-May through July of 2017 (the "Security Breach"). The information accessed includes names, Social

Security numbers, birth dates, addresses, and driver's license numbers, in addition to credit card numbers for some consumers and other documents containing personal identity information (the "Private Information").

4. Plaintiffs and Class Members' Private Information was accessed and stolen by hackers in the Security Breach.

5. Equifax's security failures enabled and facilitated the criminals' access, obtainment, theft, and misuse of Plaintiffs' and Class Members' Private Information. Unauthorized persons gained access to Equifax's databases through vulnerabilities in its security and executed commands that caused the system to transmit electronic data comprising millions of Americans' Private Information to the unauthorized persons. Equifax's security failures also put Plaintiffs and Class Members at serious, immediate, and ongoing risk of identity theft, and additionally, will cause costs and expenses to Plaintiffs and Class Members attributable to responding, identifying, and correcting damages that were reasonably foreseeable as a result of Equifax's willful and negligent conduct in properly safeguarding the Private Information.

6. The Security Breach was caused and enabled by Equifax's knowing violation of its obligations to secure consumer information. Equifax failed to comply with security standards and allowed the Private Information of millions of individuals in the United States collected by Equifax to be compromised by cutting corners on security measures that could have prevented or mitigated the Security Breach.

7. Equifax could have prevented the Security Breach. The Security Breach was the inevitable result of Equifax's inadequate approach to data security and the protection of

the Plaintiffs and the Class Members Private Information that is collected during the course of its business.

8. Equifax disregarded the rights of Plaintiffs and the Class Members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to disclose to its consumers the material fact that it did not have adequate computer systems and security practices to safeguard their Private Information, failing to take available steps to prevent and stop the breach from ever happening, and failing to monitor and detect the breach on a timely basis.

9. Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, assert claims for violation of the Fair Credit Reporting Act, violation of the New York General Business Law, and all other substantially similar statutes enacted in other states, and negligence. Plaintiffs seek monetary damages, punitive damages, statutory damages, attorneys' fees, and all other relief as authorized in equity and by law.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over Plaintiffs' Fair Credit Reporting Act ("FCRA") claims pursuant to 15 U.S.C § 1681(p) and 28 U.S.C. § 1331. This Court also has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Equifax because at all relevant times, Equifax conducted (and continues to conduct) substantial business in the Eastern District of New York.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part, if not all, of the events giving rise to this action occurred in the Eastern

District of New York, and Equifax resides and conducts substantial business in the Eastern District of New York.

## PARTIES

13. Plaintiff, Christine Jorge ("Christine), is a natural person, resides in Valley Stream, and is a resident of the State of New York. After learning of the Security Breach, Christine used a tool on Equifax's website to determine whether her Private Information was affected. Using this tool, Christine determined that her Private Information was affected by the Security Breach. As a result of the Security Breach, Christine suffered from the deprivation of the value of her Private Information and will incur future costs and expenditures of time to protect herself from identity theft and other damages resulting from her Private Information being furnished to unauthorized third parties.

14. Plaintiff, Christine, is a "consumer" as defined by 15 U.S.C. § 1681a(c).

15. Plaintiff, Joanne Durrang ("Joanne"), is a natural person, resides in North Massapequa, and is a resident of the State of New York. After learning of the Security Breach, Joanne used a tool on Equifax's website to determine whether her Private Information was affected. Using this tool, Joanne determined that her Private Information was affected by the Security Breach. As a result of the Security Breach, Joanne suffered from the deprivation of the value of her Private Information and will incur future costs and expenditures of time to protect herself from identity theft and other damages resulting from her Private Information being furnished to unauthorized third parties.

16. Plaintiff, Joanne, is a "consumer" as defined by 15 U.S.C. § 1681a(c).

17. Upon information and belief, Equifax is a corporation incorporated under the laws of the State of Georgia authorized to do business in the State of New York. Defendant Equifax

is a nationwide consumer reporting agency and purveyor of credit monitoring and identity theft protection services.

18. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports", as defined in 15 U.S.C. § 1681(d) to third parties.

19. Equifax disburses such consumer reports to third parties under contract for monetary compensation.

20. Equifax is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f).

## FACTUAL BACKGROUND

21. Equifax is in the business of collecting, assessing, and maintaining the Private Information of approximately 800 million consumers around the world in order to sell this information to third parties in the form of consumer credit reports, consumer insurance reports, or consumer demographic or analytics information. It also sells credit protection and identity theft monitoring services to consumers.

22. In the years preceding Equifax's announcement of the Security Breach, several entities storing large quantities of consumer data caused massive security breaches, including health insurer Anthem, Yahoo, Equifax's competitor, Experian, and many others. Equifax knew or should have known that the Private Information contained in its databases was a prime target for hackers. In fact, it makes many millions of dollars in profits convincing Americans to buy its credit protection and identity theft monitoring services to guard against such breaches and the damages they cause. Despite this, Equifax failed to take adequate steps to secure its systems.

23. The Private Information of Plaintiffs and Class Members is private and sensitive in nature and was left inadequately protected by Equifax. Equifax did not obtain Plaintiffs' and Class Members' consent to disclose their Private Information to any other person as required by applicable law and industry standards.

***The Equifax Security Breach***

24. On September 7, 2017, Equifax announced that its systems were compromised by cybercriminals, reportedly impacting approximately 143 million U.S. consumers. The Security Breach began in mid-May, 2017, and was not detected by Equifax for several months. Equifax admits the Security Breach arose from a "U.S. website application vulnerability" in its systems.

25. Unauthorized persons manipulated Equifax's security vulnerabilities to gain access databases of consumer information. Equifax's systems transmitted to the unauthorized persons Plaintiffs and Class Members' Private Information during a period of time of over two months without Equifax detecting or limiting the infiltration.

26. After Equifax discovered the Security Breach on July 29, 2017, it waited more than six weeks before it began notifying impacted consumers on September 7, 2017.

27. The consumer information compromised in the Security Breach includes names, Social Security numbers, birth dates, addresses, driver's license numbers, credit card numbers, and documents containing personal identity information – all information that is now in the hands of criminals.

28. The Security Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal

regulations, industry practices, and common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' Private Information to protect against reasonably foreseeable threats to the security or integrity of such information

29. Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

30. Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Equifax would have prevented the Security Breach and, ultimately, the theft of the Private Information in its possession and control.

### *Security Breaches Lead to Identity Theft*

31. The Federal Trade Commission ("FTC") has cautioned that identity theft wreaks havoc on consumers' finances, credit history and reputation and can take time, money, and patience to resolve. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

32. Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber blackmarket" for a number of years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen private information directly on various Internet websites, making the information publicly available.

*The Monetary Value of Privacy Protections and Private Information*

33. Consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States. Indeed, as a nationwide consumer reporting agency, Equifax's entire line of business depends on the fact that the Private Information of consumers is valuable, both individually and in aggregate.

34. Recognizing the high value that consumers place on their Private Information, many companies now offer consumers an opportunity to sell this information. The idea is to give consumers more power and control over the type of information that they share and who ultimately receives that information. And, by making the transaction transparent, consumers will make a profit from their Private Information. This business has created a new market for the sale and purchase of this valuable data.

35. Consumers place a high value not only on their Private Information, but also on the privacy of that data. Researchers have already begun to shed light on how much consumers value their data privacy, and the amount is considerable. Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2014 was $1,349.

36. The value of Plaintiffs' and Class Members' Private Information on the black market is substantial. By way of the Security Breach, Equifax has deprived Plaintiffs and Class members of the substantial value of their Private Information.

*Damages Sustained by Plaintiffs and Class Members*

37. Plaintiffs suffered actual injury in the form of damages to and diminution in the value of the Private Information – a form of intangible property that Plaintiffs entrusted to Equifax and that was compromised in and as a result of the Security Breach.

38. Plaintiffs and Class members have suffered actual injury and damages, including, but not limited to: (i) an increased risk of identity theft and identity fraud; (ii) improper disclosure of their Private Information, which is now in the hands of criminals; (iii) the value of their time spent mitigating the increased risk of identity theft and identity fraud; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market—for which they are entitled to compensation.

39. Plaintiffs have suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their Private Information being placed in the hands of criminals who have already, or will imminently, misuse such information.

40. Plaintiffs and Class Members have suffered additional damages based on the opportunity cost and value of time that Plaintiffs and Class Members have been forced to expend to monitor their financial accounts as a result of the Security Breach.

41. Moreover, Plaintiffs have a continuing interest in ensuring that their Private Information, which remains in the possession of Equifax, is protected and safeguarded from future breaches.

42. Acknowledging the damage to Plaintiffs and Class Members, Equifax is instructing consumers to "be vigilant in reviewing their account statements and credit reports," "immediately report any unauthorized activity to their financial institutions" and to "monitor their personal information." Plaintiff and Class Members now face a greater risk of identity theft.

43. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of the Private Information.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring all counts, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons whose Private Information was affected by the Security Breach that occurred from at least mid-May 2017 through July 2017, including all persons who Equifax's "Check Potential Impact" tool identifies as being affected. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45. In the alternative, Plaintiffs bring all counts set forth below on behalf of themselves and statewide classes with laws similar to New York law, or further in the alternative, a New York class (collectively, these alternative classes are referred to as the "New York Class") defined as:

> All persons in New York whose Private Information was affected by the Security Breach that occurred from at least mid-May 2017 through July 2017, including all persons who Equifax's "Check Potential Impact" tool identifies as being affected. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46. Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

47. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder of all Class members would be impracticable. On information and belief, based on Equifax's public statements, Class members number at least 143 million. The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Equifax's books and records. Class Members may be notified of the pendency of this action by mail, email, Internet postings, or publication.

49. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

   a. Whether Equifax failed to use reasonable care and commercially reasonable methods to secure and safeguard Plaintiffs' and Class Members' Private Information;

   b. Whether Equifax properly implemented its purported security measures to protect Plaintiffs' and Class Members' Private Information from unauthorized capture, dissemination, and misuse;

   c. Whether Equifax took reasonable measures to determine the extent of the Security Breach after it first learned of same;

   d. Whether Equifax willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and Class Members' Private Information;

e.   Whether Equifax was negligent in failing to properly secure and protect Plaintiffs' and Class Members' Private Information;

f.   Whether Plaintiffs and Class members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

50. Equifax engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and Class Members. Similar or identical common law and statutory violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

51. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of Class Members because, among other things, all Class Members were comparably injured through Equifax's uniform misconduct described above and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to Equifax that are unique to Plaintiffs.

52. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of Class Members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

53. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class

Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Equifax, so it would be impracticable for Class members to individually seek redress for Equifax's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I

### Willful Violation of the Fair Credit Reporting Act

54. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

55. As individuals, Plaintiffs and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

56. One of the fundamental purposes of the FCRA is to protect consumers' privacy. 15 U.S.C. §1681(a). Protecting consumers' privacy involves adopting reasonable procedures to keep sensitive information confidential. 15 U.S.C. §1681(b).

57. As alleged *supra*, Equifax is a consumer reporting agency and is subject to the requirements of the Fair Credit Reporting Act.

58. FCRA enumerates the exclusive purposes for which a consumer reporting agency can furnish consumer reports. 15 U.S.C. § 1681b. FCRA also requires that: Every consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title.

These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. 15 U.S.C. § 1681e.

59. Plaintiffs' and Class Members' Private Information are consumer reports under FCRA, because the information bears on, among other things, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, physical/medical conditions, and mode of living, and is used or collected, in whole or in part, for the purpose of establishing Plaintiffs' and Class Members' eligibility for credit or insurance to be used primarily for personal, family, or household purposes.

60. As a consumer reporting agency, Equifax may only furnish a consumer report under limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Plaintiffs and Class Members' Private Information. Equifax violated 15 U.S.C. § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

61. Equifax furnished the Plaintiffs and Class Members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

62. Equifax willfully, knowingly, or with reckless disregard, failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b when it enabled and facilitated the Security Breach. Equifax failed to adequately vet users of its consumer reports, failed to inquire into suspicious circumstances despite possessing knowledge that put it on inquiry notice, and failed to reasonably monitor its customers' acquisition and use of consumer reports.

63. Equifax willfully, knowingly, or with reckless disregard, failed to comply with the FCRA's requirements with respect to Plaintiffs and Class Members. As a result of Equifax's failures, they transmitted Plaintiffs' and Class Members' Private Information to criminals for illegitimate and unauthorized purposes.

64. Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiff's and the Class Members' Private Information for no permissible purposes under the FCRA.

65. As a further direct and foreseeable result of Equifax's willful noncompliance with FCRA, Plaintiffs' and Class Members' Private Information will remain posted online in the public domain, compromised, and in possession of unauthorized third parties with fraudulent intent.

66. Plaintiffs and the Class members have been damages by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiffs and each of the Nationwide and/or New York State Class Members are entitled to recovery "any actual damages sustained by the consumer…or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

67. Plaintiffs and the Nationwide and/or New York State Class Members are also entitled to punitive damages, costs of the action, and reasonable attorneys'' fees. 15 U.S.C. § 1681n(a)(2) & (3).

## COUNT II

### Negligent Violation of the Fair Credit Reporting Act

68. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

69. Defendant negligently failed to adopt and maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. § 1681b. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

70. Defendant failed to adequately vet users of its consumer reports, failed to inquire into suspicious circumstances despite possessing knowledge that put it on inquiry notice, and failed to reasonably monitor its customers' acquisition and use of consumer reports.

71. Plaintiffs' and Class Members' Private Information was wrongfully furnished to criminals as a direct and foreseeable result of Defendant's negligent failure to adopt and maintain such reasonable procedures.

72. Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiffs' and the Class Members' Private Information and consumer reports for no permissible purpose under the FCRA.

73. As a direct and foreseeable result, Plaintiffs' and Class Members' consumer reports were accessed, made accessible to, stolen, furnished, and sold to unauthorized third parties for illegitimate and unauthorized purposes.

74. As a result of Defendant's negligent violations of FCRA, as described above, Plaintiffs and Class members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

75. Plaintiff's and the Class Members have been damages by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiffs and each of the Class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a)(1).

76. Plaintiffs and the Class members are also entitled to recovery their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

## COUNT III

## Violation of New York General Business Law §349

77. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

78. Plaintiffs and Class members were subjected to Defendant's unfair or deceptive acts or practices, in violation of N.Y. Gen. Bus. Law. §349, in failing to properly implement adequate, commercially reasonable security measures to protect their Private Information.

79. Equifax willfully ignored the clear and present risk of a security breach of its systems and failed to implement and maintain reasonable security measure to prevent, detect, and mitigate the Security Breach.

80. Equifax benefitted from not taking preventative measures and implementing adequate security measures that would have prevented, detected, and mitigated the Security Breach.

81. Equifax's failure to implement and maintain reasonable security measures caused and continues to cause substantial injury to Plaintiffs and the Class Members that is not offset by countervailing benefits to consumers or competition or reasonable avoidable by consumers.

82. Equifax's conduct offends public policy and is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers.

83. Plaintiffs and Class members have suffered actual ascertainable losses including improper disclosure of their Private Information, lost value of their Private Information, lost time and money incurred to mitigate and remediate the effects of the Security Breach, including the increased risk of identity theft that resulted and continues to face them.

84. Plaintiffs' and the Class Members' injuries and losses were proximately caused by Defendant's violations of NY Gen. Bus. Law. 349, which was conducted with reckless indifference toward the rights of others, such that an award of punitive and/or treble damages is warranted.

## COUNT VI

### Negligence

85. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

86. Upon accepting and storing the Private Information of Plaintiffs and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiffs

and Class Members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the Private Information was confidential and of value and should be protected as private and confidential.

87. Equifax owed a duty of care not to subject Plaintiffs, along with their Private Information, and the Private Information of the Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

88. Equifax owed numerous duties to Plaintiffs and the other members of the Nationwide and/or New York Class. These duties include the duty:

   a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

   b. to protect Private Information in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

   c. to implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiffs and Class Members of the Security Breach.

89. Equifax knew or should have known the risks of collecting and storing Private Information and the importance of maintaining secure systems. Equifax knew of the many breaches that targeted other entities in the years preceding the Security Breach.

90. Equifax knew or should have known that its systems did not adequately safeguard Plaintiffs and the Class Members' Private Information.

91. Equifax breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

92. Because Equifax knew that a breach of its systems would damage millions of individuals, including Plaintiffs and Class Members, Equifax had a duty to adequately protect their data systems and the Private Information contained therein.

93. Equifax has a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Equifax with their Private Information was predicated on the understanding that Equifax would take adequate security precautions. Moreover, only Equifax had the ability to protect its systems and the Private Information stored on them from attack.

94. Equifax's own conduct also created a foreseeable risk of harm to Plaintiffs and Class Members and their Private Information. Equifax's misconduct including failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and even monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of breach.

95. Equifax also had independent duties under state and federal laws that required Equifax to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the data breach.

96. Equifax breached the duties it owed to Plaintiffs and Class members in several ways, including:

   a. by failing to implement adequate security systems, protocols and practices sufficient to protect customer Private Information and thereby creating a foreseeable risk of harm;

   b. by failing to comply with the minimum industry data security standards; and

by failing to timely and accurately discovery and disclose to customers that their Private Information had been improperly acquired or accessed.

97. Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to project the Plaintiffs and Class Members Private Information from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure the Plaintiffs' and the Class Members' Private Information during the time it was within Equifax's possession and control.

98. The law further imposes an affirmative duty on Equifax to timely disclose the unauthorized access and theft of the Private Information to Plaintiffs and the Class Members so that Plaintiffs and the Class Members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their Private Information.

99. Through its failure to provide timely and clear notification of the Security Breach to consumers, Equifax prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their financial data and bank accounts.

100.    Equifax's conduct was grossly negligent and departed from all reasonable standards of care, including but not limited to: failing to adequately protect the Private Information of Plaintiffs and the Class Members; failing to conduct regularly security audits; failing to provide adequate and appropriate supervision of persons having access to Private Information of Plaintiffs and Class Members; and failure to provide Plaintiffs and Class Members with timely and sufficient notice that their Private Information had been compromised.

101.     But for Equifax's wrongful and negligent breach of the duties it owed to Plaintiffs and Class members, their Private Information would not have been compromised.

102.     The injury and harm that Plaintiffs and Class members suffered was the direct and proximate result of Equifax's negligent conduct.

103.     Neither Plaintiffs nor the other Class Members contributed to the Security Breach and subsequent misuse of their Private Information as described in the Complaint.

104.     As a direct and proximate cause of Equifax's conduct, Plaintiffs and the Class Members suffered damages that nature and forms of which may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Equifax, as follows:

A.  Certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Class Counsel;

B.  Ordering Equifax to pay actual damages to Plaintiffs and Class Members;

C.  Ordering Equifax to pay statutory damages to Plaintiffs and the other members of the Class;

D.  Ordering Equifax to pay punitive damages, as allowable by law, to Plaintiffs and members of the Class;

E.  Ordering Equifax to pay attorneys' fees and litigation costs to Plaintiffs;

F.  Ordering Equifax to pay both pre- and post-judgment interest on any amounts awarded as allowable by law; and

G.  Ordering such other and further relief as may be just and proper.

Date:   Floral Park, NY
        September 14, 2017

THE PLAINTIFFS

           /s/ Ryan Gentile
By:_____
      Ryan Gentile, Esq.
      Law Offices of Gus Michael Farinella PC
      *Attorney for Plaintiffs*
      110 Jericho Turnpike – Suite 100
      Floral Park, NY 11001
      Tel: (212) 675-6161
      Fax: (212) 675-4367
      rlg@lawgmf.com

           /s/ Gus Michael Farinella
By:_____
      Gus Michael Farinella, Esq.
      Law Offices of Gus Michael Farinella PC
      *Attorney for Plaintiffs*
      110 Jericho Turnpike – Suite 100
      Floral Park, NY 11001
      Tel: (212) 675-6161
      Fax: (212) 675-4367
      gmf@lawgmf.com